**THOMAS v. UNITED STATES.**
**No. 14276.**

United States Court of Appeals
Ninth Circuit.
Aug. 6, 1954.

A. L. Maslan, Albert Hanan, Seattle, Wash., for appellant.

Charles P. Moriarty, U. S. Atty., Leonard Ware, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before DENMAN, Chief Judge, and MATHEWS and BONE, Circuit Judges.

DENMAN, Chief Judge.

Thomas appeals from a judgment of conviction on an indictment charging:

"That on or about January 2, 1953, at Seattle, in the Northern Division of the Western District of Washington, Thomas E. Thomas, alias John E. Thomas, did falsely pretend to be an officer of the United States, to-wit, a United States Senator, and as such acted under the authority of the United States, and in such pretended character did transmit a telegram to the Warden of the State of Washington Penitentiary at Walla Walla, Washington, reading as follows, to-wit:

" 'Jan. 3 1952
1158 AM

" 'Warden Craner

" 'Walla Walla State Penitentiary

" 'Herewith is ordered stay of execution of Wilson Brothers by emergency decree. Presidential authority delegated through me as United States Senator of Washington. Confirmation following from Olympia.

W. D. Magnuson' "

The indictment was based on the felony created by 18 U.S.C. § 912, as follows:

"§ 912. Officer or employee of the United States

"Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both."

While it is true that neither the President nor a United States Senator has the power to stay the execution of a death sentence of a state court, here the indictment charges Thomas with pretending to be an officer and acting under authority of the United States and acting "as such" pretended officer with such pretended authority. The Supreme Court holds on a similar statute that even if the pretense be of holding an office that does not exist and acting as if it did exist, the statute is violated. United States v. Barnow, 239 U.S. 74, 77, 36 S.Ct. 19, 60 L.Ed. 155. Referring to pertinent provisions of the similar preceding statute, that Court states 239 U.S. at page 80, 36 S.Ct. at page 22:

" * * * It is the aim of the section not merely to protect innocent persons from actual loss through reliance upon false assumptions of Federal authority, but to maintain the general good repute and dignity of the service itself. * * * "

Cf. United States v. Lepowitch, 318 U.S. 702, 704, 63 S.Ct. 914, 87 L.Ed. 1091; Russell v. United States, 9 Cir., 271 F. 684, 685.

The pertinent portions of the agreed statement of facts are that the testimony

was uncontradicted that a telephone call was made on January 2, 1953 at 11:35 P.M. from the only telephone located at the Looking Glass Tavern, 2103 North 45th Street, Seattle, Washington, by a person at the tavern at that time, who transmitted the message above set forth orally through the telephone to Ruth Beck, the Western Union operator located in the Seattle office.

There was no other testimony by any other persons with respect to receipt of the call or conversations with the person who transmitted the message through the telephone. After its receipt by Ruth Beck at the Western Union office in Seattle, the telegram was transmitted at 11:58 P.M. January 2, 1953, from the Western Union office in Seattle to the Western Union operator at Walla Walla, Washington, and from there the message was delivered to the Warden of the Washington State Penitentiary at some time after 12:01 A.M. on January 3, 1953.

The Government introduced witnesses who testified they were in the Looking Glass Tavern at 11:35 P.M. on January 2, 1953, and that they then saw the defendant using the only telephone available at the tavern at that time. None of the Government witnesses at the Looking Glass Tavern heard any of the conversation of the defendant except one Government witness, Don Thomas, who testified that all he heard in the conversation of the defendant were the words "Western Union" and "Wilson Brothers". None of the Government witnesses at the tavern knew to whom the defendant was talking or what he was saying. These Government witnesses further testified that they heard the defendant or his wife ask the bartender at the tavern for change in quarters and heard the quarters fall into the coin box of the telephone at the tavern.

Senator Warren G. Magnuson appeared at the trial and testified, first, that he did not personally send the message, either through the telephone, telegram, or other means of transmission, and further, that he did not authorize any one to send the message on his behalf.

The testimony adduced on behalf of the defendant was to the effect that the defendant had been in the tavern with his wife between 7:00 P.M. and 8:00 P.M. and between 10:00 P.M. and 10:20 P.M. on January 2, 1953; that he had used the telephone in the tavern at about 10:15 P.M. for the purpose of calling his mother-in-law, and that he had returned to his home at 10:30 P.M. and remained there all evening; and that he was at home at the time the message was telephoned in to the Western Union operator at Seattle from the tavern.

This testimony as to a telephoning by Thomas at fifteen minutes after ten was not contradicted and he thus had alibi evidence which warranted an inference by the jury that the witnesses as to the 11:35 telephone had confused the earlier telephone with the later and that at the time the 11:35 message to the Warden was sent he was at his home.

 On the question of Thomas' alibi an instruction was given sua sponte by the court, the District Court of the Western District of Washington, as follows:

" * * * When the plaintiff makes out such a case as would sustain a verdict of guilty, *and the defendant offers evidence, the burden is upon him to make out his defense as to an alibi, but it is not incumbent upon him to prove an alibi beyond a reasonable doubt*, and when the proof is all in, both that given by the plaintiff and for the defendant, then the primary question is, all evidence being considered, is the defendant guilty beyond a reasonable doubt? The law being that if, after you have considered all the evidence, that touching the alibi as well as the evidence introduced by the plaintiff, you have a reasonable doubt of the guilt of the accused, you should acquit; if you have not,

you should convict." (Emphasis supplied.)

The court apparently assumed that in such a federal felony case the law of the State of Washington controlled, for the instruction is taken bodily from a leading Washington supreme court case, State v. Rosi, 120 Wash. 514, 515, 208 P. 15.

Although it seems obvious that the burden is on the Government to prove *affirmatively* that the accused was at the place where the crime was committed and he committed it there, Falgout v. United States, infra, 279 F. 513, the State of Washington and other states hold an alibi is an affirmative *defense*, like others it cites, of which it states:

"As to all such affirmative defenses we have always held that the burden is upon the accused to support his defense to the extent of establishing a reasonable doubt in the minds of the jurors as to the guilt of the accused of the crime charged." State v. Rosi, supra, 120 Wash. at page 518, 208 P. at page 17.

With the instruction having this meaning to the learned Washington judges of the Rosi case, it is obvious that in the instant case the jurors or some of them would regard it as requiring them to go through the mental process of determining that this affirmative defense had been established by Thomas before finally arriving at his guilt or innocence.

The contrary respecting prosecutions in the federal courts is the stated law of six circuits, no circuit holding otherwise. No burden of proof is on the accused regarding an alibi. In Glover v. United States, 8 Cir., 147 F. 426, 430, that circuit considered the following instruction concerning a claimed alibi:

" 'Such defense, to be entitled to consideration, must be such as to show that at the very time of the commission of the crime charged the accused was at another place so far away and under such circumstances that he could not, with any ordinary exertion, have reached the place where the crime was committed so as to have participated in the commission thereof. But the court instructs the jury also, as a matter of law, that the burden to prove that the defendant was at another place at the time of the commission of the crime must be by a preponderance of evidence, that is, by the greater and superior evidence.' "

and held it erroneous on the following ground:

"The underlying vice in the foregoing charge of the court is in the assumption that in respect of the alibi the burden of proof 'by a preponderance of evidence, that is, by the greater and superior evidence,' shifted to the defendant. It loses sight of the fundamental rule in criminal procedure that the defendant is presumed to be innocent of the offense with which he is charged; that this is a continuing presumption which attends him like a guarding spirit throughout the ordeal of his trial, and imposes upon the prosecution the burden of overcoming such presumption by such weight of evidence as will satisfy the minds of the triers beyond a reasonable doubt of the defendant's guilt. This reasonable doubt in his favor applies to the evidence in its entirety and necessarily to any part of it."

Similarly, the Fifth Circuit in Falgout v. United States, 279 F. 513, 515, reversed for failing to give the following instruction,

" 'Where the defense is an alibi, then the evidence in support of it should be considered in connection with all the other evidence in the case, and if, on the whole evidence, there is reasonable doubt of the guilt of an accused, he should be acquitted. The burden of proof is not upon an accused to establish an

**34**

alibi by a preponderance of evidence.' "

the court holding that the presence of the accused at the place of the alleged crime is a part of the affirmative case of the prosecution, as follows:

" * * * After, as well as before, that evidence was adduced, the burden was on the prosecution to prove that when the crime was committed the defendants were at a place at which they could take part in the commission of it and that they did participate in committing it."

The Sixth Circuit cites and follows Glover v. United States, supra, in Cangelosi v. United States, 6 Cir., 19 F.2d 923. The Second Circuit in a dictum agrees with the Glover case, United States v. Vigorite, 2 Cir., 67 F.2d 329. So also the Tenth Circuit in reversing in Reavis v. United States, 10 Cir., 93 F.2d 307, 308, and the Third Circuit in reversing in United States v. Marcus, 3 Cir., 166 F.2d 497, 504.

Thomas was denied certain instructions which we hold properly denied since so far as pertinent they were covered by the instructions given. Also, certain evidence proffered by Thomas was clearly irrelevant and the exceptions taken were deemed invalid.

The judgment is reversed.