[No. 34993. Department Two. July 2, 1959.]

THE STATE OF WASHINGTON, *Respondent,* v. STANLEY RAZEY, *Appellant.*[1]

[1]Reported in 341 P. (2d) 149.

*Jack R. Dean* and *Robert J. Caw,* for appellant.

*Gordon Swyter* and *Edward G. Cross,* for respondent.

FINLEY, J.—The defendant was charged with the crimes of second-degree assault, robbery, escape, second-degree burglary and grand larceny. He waived trial by jury and submitted to trial by the court.

At the conclusion of the state's evidence, the defendant's motion to dismiss was denied by the trial court. Defendant elected to stand on this motion and introduced no evidence in his own behalf. Thereafter, the trial court entered its findings of fact and judgment and found defendant guilty on all five counts charged. Defendant has appealed.

The sole question raised on this appeal concerns the sufficiency of the state's evidence to sustain the convictions on the five counts charged. This evidence does establish the following.

On May 1, 1958, appellant was confined in the Adams county jail at Ritzville, Washington, under sentence for carnal knowledge. At the time, four other prisoners were confined in the jail. Appellant Razey and three of the others, Henry Griffith, Floyd Weise and Robert Daugherty, were locked in the prison "day room;" the fifth prisoner was confined in a separate cell. At approximately nine o'clock p.m., Marvin Collier, deputy sheriff for Adams county, entered the day room. Appellant Razey was sitting on his bunk some distance from the deputy sheriff. As a brief conversation ensued with one of the prisoners, Floyd Weise jumped Collier from behind, pinning his arms down to his sides; simultaneously, Henry Griffith hit Collier in the face, knocking him to the floor, where he received more blows and kicks. Collier was relieved of the sum of four hundred dollars and was locked in one of the jail cells.

Appellant Razey, Floyd Weise and Henry Griffith left the jail.

On the same evening, at a time not precisely ascertained, the Rogel Motor Company (located across the street from the jail) was entered through a rear window. Rather apparently, the visit was neither strictly social nor business. It definitely was without either invitation or permission. After the visit, curiously enough, a 1958 Buick automobile was missing from the motor company. At 9:20 p.m., the aforementioned car, with Griffith and Weise riding in the front seat and appellant Razey in the back seat, was driven into a gas station located at the west end of Ritzville. The three men were apprehended in the automobile at about 10:45 p.m. that evening. All three were searched, and the arresting officers relieved Weise and Griffith, jointly or severally, of a total sum of $394. Appellant had little or no money on his person.

The following portion of Collier's testimony is the only evidence relevant to the issue of whether appellant participated in the above described assault and robbery:

"Q. All right now, Mr. Collier, while you are still at the drawing, will you—and referring your attention to the time you have come into the day room—you are at the place marked 'X' on the map. The other three are at the locations as indicated. Will you tell the Court what transpired then? A. Just about the time I was looking in this direction, over here at Razey, this fellow that was in this bed, Mr. Daugherty, said something to me. At about the same instant Floyd Weise jumped on my back, pinning my arms down to my sides. And what seemed to me the same instant Henry Griffith made a lunge from this table towards me and he hit me on the side of the head. His weight—or his lick and the weight on my back which I know to be Floyd Weise, put me on the floor somewheres in this area, I don't know where. Q. Well now what, if anything, did the defendant Stanley Razey do at that time? A. What he done at that exact time I don't know. *The first time that I seen Stanley Razey to know that it was him was when I was lifted off the floor with my hands tied and the three of them was around me.* Q. All right, go ahead and tell the Court what happened from the time that Griffith struck the first blow and Weise was on your back pinning your arms down. A. Well,

I was hit, and as I say I went to the floor somewheres in this general area. As I hit the floor I received a blow on the right side of the jaw. And then I was on the floor and I felt blows on this side of my face and in the lower portion where I was hit the first time. And my hands were tied. Q. Do you know who tied your hands? A. No, I don't. *I don't know who tied my hands. They was three people at me at the time. Then I was lifted to my feet. The three subjects that was there when I got on my feet was Floyd Weise, Henry Griffith and Stanley Razey. And my hands were tied at that time. And there was subjects, who I don't know, going through my pockets. There was more than one with their hand in my pocket at the same time.* Q. All right. Now, would you back up just a little bit? Did you receive the one blow or more than one blow? A. I received one blow from Henry Griffith that I know positive of who done it. When I hit the floor who kicked me on the right jaw I don't know or who was hitting or stomping me. I believe it to be a foot that was hitting me in the lower portion of the face. I don't know who was doing that. Q. You received then more than one blow? A. Yes, I received several blows. Q. And were, some of those blows were with fists and some were kicks, is that right? A. That is my belief. Q. Well then what was the effect of this, Mr. Collier, on you physically? I mean at the time. Did you at any time become unconscious? A. It seemed to me that all during this time I was on the floor I was still falling. That was the way it seemed to me. I wasn't completely unconscious but things were spinning. As I say, I seemed to be falling. That was the sensation that I got. Q. All right. Now then you mentioned a moment ago 'the three subjects.' When you use that word to whom do you refer? A. Floyd Weise, Henry Griffith and Stanley Razey. Q. And you mentioned a moment ago this matter of going through your pockets. Can you describe to the Court just how that was done, who was around you when it was done? A. Griffith had a hold of my left arm. Somebody was a hold of my right arm. I don't know who that was. There was two subjects, one on each side of me, and one in front of me. Q. Did they lift you off the floor? A. I was helped to my feet. I was standing up on my own feet but I was being supported or held. I'm not too clear in my recollection whether I could have stood up or not. Q. All right. And then you recall hands going through your pockets, is that right? A. Yes. Q. Are you able to say who it was? A. No, I am not able to say who it was. Q. Are you able to say whether or not it was more

than one person? A. Yes. Q. Well, was it more than one person? A. Yes, it was. It was more than one person. They was hands in each of my pockets at the same time." (Italics ours.)

In *State v. Siemion* (1959), *ante* p. 17, 337 P. (2d) 715, this court stated:

"By a challenge to the sufficiency of the evidence, respondent admits its truth, and all inferences that reasonably can be drawn from it. He also requires us to interpret the evidence in the light most prejudicial to him and most favorable to the state."

With this rule in mind, we are convinced nevertheless that the state failed to make out a *prima facie* case against appellant Stanley Razey with reference to the charges of robbery and assault. The only evidence relative to these two crimes was the testimony of Mr. Collier, quoted above. He was unable to state that appellant participated in the assault or robbery. He was extremely hazy concerning the details of the robbery. His testimony implies that at least two persons were going through his pockets, and, at the time, another person was somewhere in front of him. When appellant was apprehended, he had no money on his person; in fact, the money taken from Mr. Collier was recovered from Weise and Griffith.

The state urges that the circumstances proved in this case strongly indicate that the three men were engaged in a concerted effort. We agree with this as to the charges of escape, second-degree burglary and larceny. But, under the evidence as presented, it would be sheer speculation and conjecture to conclude that appellant took part in the assault and robbery.

More specifically, concerning the crime of escape, the state proved that appellant was lawfully confined in the Adams county jail; that he absented himself from that institution without lawful authority. This is sufficient to establish a *prima facie* case of escape. There is no merit in appellant's contention that the state failed to prove that he was not acting under duress at the time of his departure

from the jail. Appellant has this shoe on the wrong foot. An affirmative defense must be proved by the one seeking to rely on it. Appellant presented no evidence in his own behalf.

██ The convictions of burglary and larceny are based upon the breaking and entering of the Rogel Motor Company and removing the 1958 Buick therefrom. Appellant vigorously asserts that the evidence relied upon to convict him of these charges was entirely circumstantial and was not sufficient to create a *prima facie* case. We can certainly agree with appellant that the evidence was circumstantial, but not that it was insufficient to establish a *prima facie* case.

Appellant relies on *State v. Portee* (1946), 25 Wn. (2d) 246, 170 P. (2d) 326, wherein this court reiterated the rule that mere proof of possession of stolen goods does not raise a presumption of law which a defendant is required to rebut. However, in that case the court also quoted with approval and emphasis from 1 Wharton's Criminal Evidence (11th ed.) 198, § 191:

" 'But the rule is otherwise when there is indicatory evidence on collateral points.' "

 Stated another way, the possession of stolen goods certainly supports an inference of fact to be considered together with all other facts in the case. Where, as here, such possession is coupled (a) with evidence placing appellant in the vicinity of Rogel Motor Company at a time during which the burglary could have been committed, and (b) with the evidence proving that appellant was in possession of the stolen property approximately *twenty minutes* after he escaped from the jail, we believe a *prima facie* case of burglary and larceny was established. It then became incumbent upon appellant to introduce evidence to explain his role relative to the possession of this stolen property. As already indicated, he presented no such evidence.

On the basis of the foregoing, we have concluded that the convictions of robbery and assault should be reversed; that

the convictions of escape, burglary and larceny should be affirmed. It is so ordered.

WEAVER, C. J., MALLERY, ROSELLINI, and FOSTER, JJ., concur.

August 14, 1959. Petition for rehearing denied.