[Nos. 39198, 39200.     Department One.     August 17, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. HENRY CLAY
TOLLETT *et al., Appellants.**

*Mark R. Fortier,* for appellant Tollett (appointed counsel for appeal).

*Stephen L. Johnson,* for appellant Bell (appointed counsel for appeal).

*Lincoln E. Shropshire* and *Patrick H. Olwell,* for respondent.

DENNEY, J.†—Appellants, Henry Clay Tollett and Frank Bell, appeal from judgments entered by the Superior Court for Yakima County pursuant to verdicts of a jury finding

*Reported in 431 P.2d 168.

†Judge Denney is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

them guilty of the crime of grand larceny by way of receiving and withholding property of a value in excess of $75 known to have been stolen, all in violation of RCW 9.54.010(5) and RCW 9.54.090(6). Appellants were codefendants in the superior court along with George H. Treece and Douglas W. Lavere, who also were convicted but do not appeal. Appellants filed separate notices of appeal. The appeals were consolidated.

Everett McKeller Construction Company was engaged in construction of a bridge over the Naches River in Yakima County. A shed was erected to house tools. The door of the shed was secured at the time employees of the construction company left work about 4:30 p.m. on Friday, April 8, 1966. Upon returning to work on Monday morning, April 11, 1966, they discovered that the shed had been broken open and that tools consisting of a Homelite chain saw, electric drill, electric skill saw, chain, and a hoist had been stolen. In the late morning or early afternoon of Saturday, April 9, 1966, an automobile containing the appellants and the two other defendants drove into the yard of Morton Supply in Yakima. Appellant Tollett approached Mr. Ralph Morton for the purpose of selling the stolen tools which were in the car. After considerable conversation and dickering, Mr. Morton purchased the tools for $60. Other facts will be noticed in connection with discussion of assignments of error.

It is first contended that the state did not prove that the stolen articles were of a value in excess of $75 at the time of the theft. The owner testified that the tools were worth in excess of $300. Mr. Ralph Morton, one of the proprietors of Morton Supply, testified on one occasion to a value of $60, but when asked as to the value of individual items, testified to values which totaled $112. It was for the jury to weigh the various opinions.

The witnesses did not express their opinion on value as of the date of the theft but as of the date of trial. The tools were sold on April 9, 1966. The trial commenced on May 24, 1966. The lapse of less than 7 weeks did not

make the opinions worthless in determining value as of the date the tools were unlawfully received and withheld.

Mr. McKeller's opinion of value was based on the fact that the saw was operable; whereas Mr. Morton was unable to start the chain saw at the time he purchased it. This did not destroy the probative force of Mr. McKeller's opinion on value. The result of a test allowed by the trial court showed that the saw was operable at the time of trial, and there was proof that the saw had been in the sheriff's locker between the time it was secured from Morton Supply and the date of trial. There was ample evidence to warrant the conclusion of the jury that the tools were worth more than $75 on the date of the commission of the offense.

Appellants assert that a mistrial should have been granted because of an accumulation of so-called irregularities which occurred during the trial. Appellant Tollett refused before the jury was chosen to consent to separation of the jury, but later did consent to separation after the jury was chosen. The trial court took full responsibility in announcing at the commencement of the trial that the jury would be kept together. When the jurors were later told that they could separate, the trial court did not say anything from which the jurors could conclude that any of the defendants had been responsible for the first order against separation. No prejudice to the appellants was shown.

Counsel for defendant Treece (not an appellant) told the jury in his opening statement that his client would take the witness stand contrary to the usual practice advocated by defense attorneys. Counsel for defendant Treece further requested the deputy prosecuting attorney to supply him with a copy of a so-called FBI rap sheet showing previous convictions of his client. In complying with this request, it is claimed the deputy prosecuting attorney thumbed through several papers which appeared to be other rap sheets. There is no contention that the deputy prosecuting attorney made any unnecessary display of the documents. The deputy prosecuting attorney was in no way responsible

for what the attorney for defendant Treece said in his opening statement, nor did he do anything improper in securing the record of previous convictions at the request of counsel for defendant Treece.

The deputy prosecuting attorney made the following remarks during the course of his closing argument:

Of course, if you believe they took them, then, of course, they knew they were stolen, if they stole them, themselves. If you believe possibly they received them from somebody else, then you have to infer that they knew they were stolen. Tollett, the question was — first of all don't believe Tollett, because we know he wasn't telling the truth to begin with when he was on the stand, and when he said he wasn't there to begin with. The rest of them all testified — or not testified — excuse me — the other three, in statements to Deputy Sheriff Thompson, said that they didn't know anything about these tools, which we know isn't true, too, because we know that they were down there.[1]

Contrary to appellants' assertion, we cannot find that these remarks contain a comment on the failure of appellant Bell to testify. The remark of the deputy prosecutor in which he said, "The rest of them all testified" was obviously inadvertent and was corrected as soon as possible. The deputy prosecutor was referring to the testimony of Deputy Sheriff Thompson that Treece, Lavere and Bell had made statements to him in which they said that all four had come from Portland to Yakima together, and that they knew nothing about the tools or the sale to Morton Supply.

We also find no merit in appellants' contention that the deputy prosecuting attorney asserted some "special knowledge" as to the whereabouts of appellants on April 9, 1966. He used the pronoun "we" as indicating the jury and himself. His remark merely had reference to the abundant testimony identifying the appellants as two of the men who participated in the sale of the tools to Morton Supply.

Deputy Sheriff Thompson, in relating a conversation with defendant Lavere, testified that Treece and appellant

---

[1]Defendant Treece and appellant Tollett testified, but defendant Lavere and appellant Bell did not.

Bell were present. He later testified that the conversation with Lavere took place out of the presence of Treece and Bell. Upon learning of this, appellants made motions for mistrial contending that irreparable damage had been done by failing to instruct the jury *before* the deputy sheriff testified that the statement of each defendant could only be used against the defendant making such statement. Upon learning of the true situation, the trial judge so instructed the jury. The matter was corrected at the earliest opportunity and the jury was correctly instructed on the subject.

Since we find that no one of the incidents alone was prejudicial, they do not in the aggregate call for a mistrial.

■ Appellants next contend that an order of dismissal should have been entered pursuant to their motion challenging the sufficiency of the evidence to prove that the tools had been stolen. Competent evidence showed that the tools had been placed in the shed in the late afternoon of April 8, 1966; that the tool shed had been locked; that permission had not been given by the owner or by the foreman on the job to take the tools out of the shed; that the tool shed had been broken open by breaking the hasp off the shed door and that the tools were missing. This was ample circumstantial evidence to permit the jury to conclude that the tools had been stolen. All circumstances are consistent with a conclusion that the tools were stolen and inconsistent with any reasonable hypothesis that they were taken with any other than larcenous intent. *State v. Myers,* 65 Wn.2d 911, 400 P.2d 372 (1965).

Appellants contend that the evidence did not warrant the jury finding that they knew that the tools had been stolen. The tools were removed from the shed after 4:30 p.m. on April 8, 1966, and were sold to Morton Supply in the late morning or early afternoon of the following day. Appellant Tollett approached Mr. Morton for the purpose of selling the tools, conducted the negotiations for the sale, and gave a fictitious name, "Wilbert Underhill" in identifying himself. He further accepted a check in payment for the tools payable to "Wilbert Underhill."

■ It is true that mere possession of stolen property does not create a presumption of guilt of burglary or larceny, but it is a circumstance or fact which may be considered with all other facts and circumstances in determining the guilt or innocence of the accused. *State v. Razey,* 54, Wn.2d 422, 341 P.2d 149 (1959); *State v. Mevis,* 53 Wn.2d 377, 333 P.2d 1095 (1959).

The added circumstances that appellants had been together and that appellant Tollett gave a fictitious name to cover his identity are sufficient to supply the additional proof to supplement evidence of possession of recently stolen property. They indicate knowledge that the tools were stolen and thus made a case for the consideration of the jury. In the case of *State v. Portee,* 25 Wn.2d 246, 253, 170 P.2d 326 (1946), we said in quoting from 4 Nichols on Applied Evidence:

> "When a person is found in possession of recently stolen property, slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction. When the fact of possession of recently stolen property is supplemented by the giving of a false or improbable explanation of it, or a failure to explain when a larceny is charged, or the possession of a forged bill of sale, *or the giving of a fictitious name,* a case is made for the jury." (Italics supplied in Portee.)

We have very recently reaffirmed this principle in the case of *State v. Douglas, ante* p. 303, 428 P.2d 535 (1967). See also *State v. Bobinski,* 170 Wash. 120, 15 P.2d 691 (1932).

The evidence was ample to justify a finding of guilty knowledge on the part of appellants.

Appellant Bell makes an additional assignment of error. He asserts that the evidence of his participation in the sale of the tools was so slight as to be insufficient to justify submission of the issue of his guilt to the jury. Bell had admitted to the deputy sheriff that he had come to Yakima from Portland with the other defendants in Treece's car and had been with them from time to time while in Yakima. He was with Tollett, Treece and Lavere at the time the tools were sold and produced a social security card as

identification of the person for whom the check should be written, although the check was eventually issued to Tollett under the name of "Wilbert Underhill." Bell accompanied the bookkeeper to the office for the purpose of preparation of the check. Appellant Bell's participation was something more than passive. It was such that the jury could conclude that he aided Tollett in the receiving, withholding, and sale of property known to have been stolen. *State v. Bobinski, supra.*

The judgments of the trial court are affirmed.

FINLEY, C.J., WEAVER, HAMILTON, and HALE, JJ., concur.

October 4, 1967. Petition for rehearing denied.