[No. 44375. En Banc. January 10, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. NORRIS D. PETIT, ET AL, *Appellants.*

268

*Carson F. Eller*, for appellants.

*Guy Glenn, Prosecuting Attorney*, for respondent.

WRIGHT, J.—This matter involves the right of three persons to fish in Willapa Bay commercially by gillnetting without obtaining a gillnet license from the State of Washington, Department of Fisheries. Each of defendants claims the right to fish without a license based upon the rights of the Quinault Indian Tribe under the Treaty of Olympia, dated January 25, 1856.

The facts differ as to each of the defendants who were arrested on different occasions. The essential facts have been substantially agreed upon as follows: (1) Each had been commercially gillnetting just before his arrest; (2) The fishing was in Willapa Bay, which is sometimes called Willapa Harbor and was formerly known as Shoalwater Bay; (3) None of the defendants held commercial gillnet fishing licenses; (4) Each of the defendants is an enrolled member of the Quinault Indian Tribe.

The only question in dispute is whether Willapa Bay is a part of the "usual and accustomed grounds and stations" where the members of the Quinault Tribe might exercise the "right of taking fish."

█ Upon the issue of whether Willapa Bay was a "usual and accustomed" fishing place for the Quinault Tribe at the date of the treaty, there is an understandable lack of evidence. The trial court found "[t]hat the evidence in this case does not establish Willapa Bay as one of the accustomed fishing places of the Quinault Indian Tribe." The

findings of the trial court supported by the record will not be disturbed on appeal. *Sylvester v. Imhoff*, 81 Wn.2d 637, 503 P.2d 734 (1972).

Article 1 of. the Treaty of Olympia does not establish Willapa Bay as one of the usual and accustomed fishing grounds of the Quinault Tribe, for the treaty deals only with lands north of a ridge between the Quinault and Chehalis Rivers, and, therefore, necessarily far north of Willapa Bay.

The case of *United State v. McGowan*, 2 F. Supp. 426 (W.D. Wash. 1931) is likewise of no help. Therein it was held that Bakers Bay and the mouth of the Columbia River were not within the usual and accustomed grounds and stations of the Quinault Tribe. The court therein strongly suggested that Shoalwater Bay was not within the tribe's area, but that was dicta.

The more recent case of *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd*, 520 F.2d 676 (9th Cir. 1975), *cert. denied*, 423 U.S. 1086, 47 L. Ed. 2d 97, 96 S. Ct. 877 (1976), commonly known as the "Boldt decision", describes the area of the Quinault Tribe in terms similar to the treaty; that is, it mentions only Grays Harbor and areas to the north thereof. That opinion, however, makes no claim to a complete listing of all "usual and accustomed grounds and stations."

██ There is a lack of proof on the question of whether Willapa Bay was a usual and accustomed ground. In such a situation the party having the burden of proof cannot prevail. We held in *State v. Moses*, 79 Wn.2d 104, 483 P.2d 832 (1971) that treaty rights constitute an affirmative defense which must be proved by the one who asserts it. We said in part at page 110:

> An affirmative defense to a criminal charge, therefore, must be proved by one who relies on it. *State v. Razey*, 54 Wn.2d 422, 341 P.2d 149 (1959); *State v. Brown*, 97 R.I. 95, 196 A.2d 138 (1963); 29 Am. Jur. 2d *Evidence* § 156 (1967). If one accused of violating the state's fishing laws and regulations claims a treaty exemption to their

operation, his claim constitutes an affirmative defense and he has the burden of showing by a preponderance of the evidence the existence of the treaty, that he is a beneficiary of it and that the treaty as a matter of law bars as to him the operation and enforcement of the fishing laws and regulations.

The defendants failed to sustain the burden of proving their affirmative defense. The judgment appealed from is affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, and BRACHTENBACH, JJ., concur.

UTTER, J. (dissenting)—I dissent. The majority affirms the convictions in these consolidated cases and, by so doing, adopts the trial court's erroneous analysis of the nature of the treaty right conferred upon the appellants and other members of the Quinault Indian Tribe by virtue of the Treaty of Olympia. The trial court then compounded that error by placing the burden upon the appellants to establish that defense by a preponderance of the evidence. In view of these errors, I would reverse the convictions in each of these cases and remand the same for new trial. The State of Washington, the United States, and fishermen, both Indian and non–Indian have, in recent years, become thoroughly entangled in a net of litigation concerning the scope of treaty fishing rights. This case is yet another result of the confusion caused by that protracted litigation. It has long been established that the State may not require license fees of Indians fishing in compliance with rights conferred by federal treaty. *See Tulee v. Washington,* 315 U.S. 681, 86 L. Ed. 1115, 62 S. Ct. 862 (1942).

Each of the defendants in these cases was arrested for engaging in gillnet fishing without obtaining the gillnet license required by the State of Washington. In answer to these charges, the defendants asserted as their defense an exemption from the license requirement based upon their right as Quinault Indians to fish at "usual and accustomed"

places which, they claim, includes Willapa Bay, the situs of their allegedly unlawful activity.

As the majority points out, neither the treaty here at issue nor the decisions of the state or federal courts answer the question of whether or not the waters of Willapa Bay are a usual and accustomed fishing ground of the Quinault Tribe. However, the recent decision in *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd*, 520 F.2d 676 (9th Cir. 1975), *cert. denied*, 423 U.S. 1086, 47 L. Ed. 2d 97, 96 S. Ct. 877 (1976), while leaving open that specific question, does much to clarify the legal nature of the defense asserted by the appellants and the treaty right upon which it is based. Clearly the respondent here, the State of Washington, as a party to that decision, is bound by the interpretations of the Treaty of Olympia therein set forth. *See Tacoma v. Taxpayers*, 357 U.S. 320, 340–41, 2 L. Ed. 2d 1345, 78 S. Ct. 1209 (1958).

Judge Boldt, in his decision, defined the key phrase employed by the authors of the treaty as follows:

Therefore, the court finds and holds that every fishing location where *members of a tribe customarily fished from time to time* at and before treaty times, however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters, is a usual and accustomed ground or station at which the treaty tribe reserved, and its members presently have, the right to take fish.

(Italics mine.) *United States v. Washington, supra* at 332. At another point in the same decision the mechanics of the defense relied upon by these appellants are explained.

After a reasonable time for compliance, any tribal member fishing in a location other than as reported by his tribe, is acting in violation of the orders and decision of this court. If such tribal member is also fishing in violation of state law, he or she is subject to state arrest and criminal prosecution; provided, that if the defendant proves he was fishing at a usual and accustomed ground

or station of his tribe, although not previously designated as such, it shall be a defense . . .

*United States v. Washington, supra* at 408.

Thus, under *United States v. Washington, supra,* the defense is formulated in a manner that requires the defendant asserting it to establish, by some unstated burden of proof, not only that he is a member of a treaty tribe, but also that he was fishing in an area which was a usual and accustomed ground of some members of his tribe at or before treaty times. *Accord, State v. James,* 72 Wn.2d 746, 435 P.2d 521 (1967); *Department of Game v. Puyallup Tribe, Inc.,* 70 Wn.2d 245, 257, 422 P.2d 754 (1967). To establish their defense, the appellants need not show that a particular percentage of the tribe fished Willapa Bay in the past, or that they are in any manner lineally descended from those who actually did. They also need not show that a majority or any other specific percentage of the present tribal fishermen fish the area in question. They need only produce evidence showing, by the requisite burden of proof, that some members of their tribe customarily fished the area at or before treaty times.

In an effort to establish this defense, the appellants presented evidence on the issue of their status as members of the Quinault Tribe and also testified as to the history of their respective families in the Willapa Bay area. Appellant Petit testified that he was 59 years old, that his father had fished Willapa Bay for 60 years (since 1912), and that his grandfather had fished it about 50 years. The appellants David and Herb Frank are father and son; the elder Frank testified that he had fished Willapa Bay as his "usual and accustomed ground" for 24 years and that his son represented at least the fourth generation of his family to live on Willapa Bay. The State presented absolutely no evidence pertinent to the issue of the status of the bay under the Quinault treaty.

The trial court declined to allow the defense, stating in its memorandum opinion:

The evidence in the case at bar, however, clearly does not establish Willapa Bay as one of the accustomed fishing places. The fact that there are four or five Quinault members . . . fishing on Willapa Bay, and that the father and grandfather of two of them also fished there all of their lives, does not establish that area as a usual and accustomed fishing place of the Quinault Tribe. There is nothing in the findings of fact or conclusions of law which justifies an inference that the trial court judge construed the appellants' defense as being based upon a theory different from that set forth in the memorandum opinion. The foregoing statement makes it rather clear that the trial judge assumed that the appellants were obligated to prove that a substantial percentage of the tribe had fished Willapa Bay in order to establish their defense. This is an error of law which obviously prejudiced the appellants. They need only show that *some* members of the tribe *customarily* fished the area. The finder of fact evaluated the proffered defense upon the basis of a misconception as to the legal underpinnings of that defense. I believe the appellants are therefore entitled to a new trial.

Moreover, the above quoted statement from the trial judge's memorandum opinion also indicates an assumption that the appellants, in order to create a defense based upon the Treaty of Olympia, were obligated to *"establish"* that Willapa Bay was a usual and accustomed fishing ground of the Quinaults. The majority quotes language from the opinion of this court in *State v. Moses*, 79 Wn.2d 104, 483 P.2d 832 (1971), which indicates that a defendant must establish the facts necessary to the defense by a preponderance of the evidence. The use of such a standard not only has no support in our case law but also places an unconstitutional burden upon a criminal defendant. The record does not disclose the burden placed upon the appellants with regard to their defense. However, the language of the memorandum opinion suggests that the court may have relied upon the preponderance test set forth in *Moses*. I believe that the possibility that the defendants' testimony

as to the defense was weighed against a preponderance of the evidence standard provides a further distinct basis for reversal of these convictions.

It is well established that, while this state places the burden of establishing an affirmative defense upon the defendant in a criminal case, the defendant satisfies that burden simply by producing evidence creating a reasonable doubt as to the general question of guilt of the crime charged. *State v. Bromley,* 72 Wn.2d 150, 432 P.2d 568 (1967); *State v. Pistona,* 127 Wash. 171, 219 P. 859 (1923); *State v. Rosi,* 120 Wash. 514, 208 P. 15 (1922). In *Bromley,* at page 155, this court quoted with approval the following statement from our earlier opinion in *Rosi:*

> As to all such affirmative defenses we have always held that the burden is upon the accused to support his defense to the extent of establishing a reasonable doubt in the minds of the jurors as to the guilt of the accused of the crime charged.

The assertion of the more stringent preponderance of the evidence test in the *Moses* decision is not supported by the two cases therein cited as authority for the proposition and is clearly inconsistent with the general rule of criminal affirmative defenses long adhered to by this court. The conclusion that a preponderance test is improper finds further support in the federal courts' rather consistent refusal to allow the use of instructions which directly or impliedly place upon the defendant the burden of persuasion as to the existence of an affirmative defense, rather than simply requiring the production of evidence sufficient to raise a reasonable doubt as to his guilt. *See, e.g., Johnson v. Bennett,* 386 F.2d 677 (8th Cir. 1967); *Thomas v. United States,* 213 F.2d 30 (9th Cir. 1954)(and cases therein cited). In any event, the Supreme Court's recent decision in *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975), holding impermissible the use of a presumption to shift the burden of persuasion as to the existence of an element of a crime to the defendant, contains language strongly suggesting that placing a preponderance

of the evidence burden upon a defendant seeking to establish a defense such as this one violates the defendant's right to due process of law. This decision, subsequent to the *Moses* decision, makes it clear that the language used in *Moses* no longer states a constitutionally supportable test. Comment, *Unburdening the Criminal Defendant: Mullaney v. Wilbur and the Reasonable Doubt Standard*, 11 Harv. Civ. Rights–Civ. Lib. L. Rev. 390, 400–18 (1976).

The use of a preponderance of the evidence test for purposes of establishing this defense is particularly improper in view of the extreme difficulty of proving with any substantial certainty, particularly in the context of a misdemeanor charge such as that involved here, the customary fishing grounds of Indian people who lived more than 120 years ago.

> The tribes reserved the right to fish at "*all* usual and accustomed grounds and stations." . . . "[G]rounds" indicates larger areas which may contain numerous stations and other unspecified locations which in the urgency of treaty negotiations could not then have been determined with specific precision and cannot now be so determined.

*United States v. Washington, supra* at 332. To hold that individual Indian defendants charged with minor violations of our laws, arising from their assertion of a right to fish in areas not yet finally determined to be within the scope of their tribe's treaty in a case involving all interested parties, must produce evidence sufficient to establish such a right by a preponderance of the evidence not only is inconsistent with the great body of our criminal law, but in the context of this case, effectively precludes assertion of a treaty right defense.

Our court has previously recognized that it is inappropriate to make final determinations as to the scope of a treaty fishing right upon the basis of a limited record in a criminal case. *State v. James, supra.* This case, like *James*, involves primarily the potential criminal liability of the named

defendants. The scope of their treaty fishing right is a collateral issue relevant only as a defense to the crime charged. The ultimate resolution of these criminal cases "should not foreclose the reception of evidence relating to this question and perhaps a new and different determination thereof" (*State v. James, supra* at 752) in a subsequent case involving other parties.

In view of the errors in defining the scope of and burden of proof with regard to this defense, I would reverse these convictions and remand these consolidated cases for new trial. If, in the course of those trials, the defendants, or any of them, produce evidence tending to show their membership in a treaty tribe and that some members of their tribe customarily fished the area in question, at or before treaty times, which is sufficient to raise a reasonable doubt as to their guilt of the crime charged, a judgment of acquittal would be required.

HOROWITZ and DOLLIVER, JJ., concur with UTTER, J.