[Nos. 11120–5–I; 11121–3–I; Division One. December 12, 1983.]
 11122–1–I.

THE STATE OF WASHINGTON, *Respondent,* v. RODNEY
COURVILLE, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. MARK
P. JAMES, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE
STARR, *Petitioner.*

*Richard Reich,* for petitioners.

*Norm Maleng, Prosecuting Attorney,* and *Douglas Whalley, Deputy,* for respondent.

CALLOW, J.—The defendants, Rodney Courville, Mark James, and George Starr, Sr., whose cases have been consolidated on appeal, now appeal, on discretionary review, the decision on RALJ appeal entered by the King County Superior Court which reversed an order of dismissal entered by the Federal Way District Court. The petitioners inquire whether individual treaty fishermen may be criminally prosecuted for possession of shellfish in excess of state fisheries regulations even though they prove that such shellfish were taken at their tribe's usual and accustomed fishing grounds. The petitioners also present a claim that they have been subjected to double jeopardy.

On May 20, 1981, Mark James and Rodney Courville were stopped by a Washington Department of Fisheries officer as they were returning to their vehicle after digging clams at Adelaide Beach in Federal Way. Both were charged with possessing shellfish in excess of the personal use limits established by WAC 220–56–310.

The following day George Starr, Sr., was also stopped by the officer while returning to his vehicle after digging clams at Adelaide Beach. He was also charged with possession of shellfish in excess of the personal use limits under WAC 220–56–310.

A summary of the charges follows:

Mark P. James—Possession of 14 pounds of hardshell clams and 14 horse clams over the limits set by WAC 220–56–310(1)(a) and (4).

Rodney Courville—Possession of 8 pounds of hardshell clams and 21 horse clams over the limits set by WAC 220–56–310(1)(a) and (4).

<u>George Starr, Sr.</u>—Possession of 24 pounds of hardshell clams over the limit set by WAC 220–56–310(1)(a).

The pertinent sections of former WAC 220–56–310 state:

It shall be lawful unless otherwise provided for any one person to take in any one day or possess for personal use at any one time the following quantities and sizes of shellfish:

(1) Cockles, borers and clams in the shell, except razor clams, geoduck clams and horse clams:

(a) All areas except Willapa Bay, seven pounds in the aggregate not to exceed a count of forty clams. . . .

(4) Horse clams: First 7 clams taken.

These cases were originally brought in the Federal Way District Court. On June 30, 1981, the defendants filed a motion to dismiss and supporting memorandum asserting "that each of the defendants is an enrolled member of the Muckleshoot Indian Tribe possessing treaty rights to harvest shellfish and therefore WAC 220–56–310 is invalid as applied to defendants". On July 7, 1981, the trial court denied the defendants' motion to dismiss following a hearing on said motion based on its determination that the treaty rights asserted by the defendants constituted an affirmative defense requiring proof at trial of certain factual issues. The three cases were then consolidated and jury trial waived.

The cases were heard on July 17, 1981, and the District Court found each of the defendants to be a member of the Muckleshoot Tribe and Adelaide Beach to be a usual and accustomed clamming beach of that tribe and dismissed the consolidated cases.

The State appealed the decision of the District Court to the Superior Court. On November 20, 1981, the Superior Court entered a decision on RALJ appeal reversing the District Court, stating in part:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the decision of the court of limited jurisdiction is reversed for the following reasons: (1) Washington State courts have jurisdiction over the subject matter and over the defendant, absent a prior determination of treaty

rights by the Federal District Court, pursuant to *United States v. Washington,* 459 F. Supp. 1020, [1037 (W.D. Wash. 1978)]; (2) Absent a prior adjudication of the right to take shellfish in *United States v. Washington,* respondents are barred from asserting a treaty right to take shellfish as a defense to state criminal charges of possessing shellfish in excess of state limits . . .

On February 5, 1982, we granted the defendants' motion for discretionary review pursuant to RAP 2.3(d) and consolidated the appeals of the defendants.

The initial issue is whether an individual treaty fisherman may be criminally prosecuted for possession of shellfish in excess of state fisheries regulations even though he proves that such shellfish were taken at his tribe's usual and accustomed fishing grounds.

There is no contention that the defendants did not in fact take the clams as alleged by the State in a quantity in excess of State Fisheries Regulation WAC 220–56–310. Rather, the defendants contend that they are enrolled members of the Muckleshoot Indian Tribe and that the clams were taken from Adelaide Beach which is a usual and accustomed fishing ground of that tribe and, therefore, are not subject to state regulation. The State contends that *United States v. Washington,* 459 F. Supp. 1020, 1037 (W.D. Wash. 1978) requires that a preliminary determination of off–reservation treaty shellfish rights must be made in federal court before an individual tribal member may raise such a right as an affirmative defense to state criminal charges of possessing shellfish in excess of state limits.

■ The Muckleshoot Indian Tribe is the holder of treaty hunting and fishing rights under the Treaty of Medicine Creek, December 26, 1854, ratified March 3, 1855, and proclaimed April 10, 1855, 10 Stat. 1132, and the Treaty of Point Elliot, January 22, 1855, ratified March 8, 1859, and proclaimed April 11, 1859, 12 Stat. 927. *United States v. Washington,* 384 F. Supp. 312, 349 (W.D. Wash. 1974), *aff'd,* 520 F.2d 676 (9th Cir. 1975), *cert. denied,* 423 U.S. 1086, 47 L. Ed. 2d 97, 96 S. Ct. 877 (1976). Each of these

treaties, with insubstantial variations, contains the following provision securing to the Indians certain off–reservation rights:

> The right of taking fish, at all usual and accustomed grounds and stations, is further secured to said Indians . . . *Provided, however,* That they shall not take shell fish from any beds staked or cultivated by citizens . . .

Treaty of Medicine Creek, art. 3; Treaty of Point Elliot, art. 5. Treaties entered into between Indian tribes and the United States are essentially contracts between two sovereign nations and are supreme over the constitution and laws of a state. *Washington v. Washington State Comm'l Passenger Fishing Vessel Ass'n,* 443 U.S. 658, 61 L. Ed. 2d 823, 99 S. Ct. 3055 (1979); *Skokomish Indian Tribe v. France,* 269 F.2d 555 (9th Cir. 1959). The State does not contend that the reservation to take "fish" in these treaties exempts shellfish. In fact, the reservation of a right to take shellfish in these treaties is confirmed by the express reference to shellfish in the treaty fishing provision. "The right of taking fish . . . is further secured to said Indians . . . *Provided, however,* That they shall not take shell fish from any beds staked or cultivated by citizens". The shellfish taken by the defendants were not taken from any beds staked or cultivated by citizens.

 "A regulation which is validly promulgated and necessary for conservation purposes may be applied in a nondiscriminatory manner to restrict both treaty and nontreaty fishing." *State v. Reed,* 92 Wn.2d 271, 273, 595 P.2d 916, *cert. denied,* 444 U.S. 930 (1979); *see Puyallup Tribe, Inc. v. Department of Game,* 433 U.S. 165, 171, 53 L. Ed. 2d 667, 97 S. Ct. 2616 (1977); *Puyallup Tribe v. Department of Game,* 391 U.S. 392, 20 L. Ed. 2d 689, 88 S. Ct. 1725 (1968). The State has made no showing, nor does it contend that WAC 220–56–310 is reasonable and necessary for conservation. Hence, the treaty rights of the Muckleshoot Tribe prohibits the State from regulating off–reservation fishing by enrolled members of the tribe while fishing at their usual and accustomed fishing grounds. *United States*

*v. Washington,* 384 F. Supp. 312. These rights are, subject to qualification by the states, necessary in the interest of conservation. *Puyallup Tribe v. Department of Game, supra; Tulee v. Washington,* 315 U.S. 681, 86 L. Ed. 1115, 62 S. Ct. 862 (1942). Moreover, the Muckleshoot Tribe has the power to regulate the treaty fishing rights of its individual members off reservation provided the tribe first complies with specified qualifications and conditions. *United States v. Washington,* 384 F. Supp. at 340–41.

In *United States v. Washington,* 384 F. Supp. 312, the court retained continuing jurisdiction to ensure that state police power regulations were not used to impair the rights of the treaty tribes. Based on this exercise of continuing jurisdiction, by order dated October 8, 1974, as amended and supplemented November 21, 1974 and August 6, 1975, the court entered an Order for Program To Implement Interim Plan. *United States v. Washington,* 459 F. Supp. at 1035–38. That order provided, *inter alia,* that a treaty tribe must seek a preliminary determination of its treaty rights in federal court before it could exercise off–reservation treaty rights to nonanadromous fish and shellfish.

> In order to be entitled to exercise off–reservation treaty fishing rights to nonanadromous fish and shellfish, any tribe party to this case shall, prior to any attempt to exercise such rights, present prima facie evidence and arguments supporting its claim to treaty entitlements to such nonanadromous fish and shellfish upon which the court may make a preliminary determination as to the tribe's entitlement to such species, pending final determination of tribal treaty–right entitlement to nonanadromous fish and shellfish; *provided* however, that nothing in this paragraph shall preclude members of such tribes from fishing off–reservation in conformity with state regulations applicable to nonanadromous fish and shellfish, to the same extent as nontreaty–right fishermen. Following such preliminary determination, off–reservation fishing areas shall be opened only to the extent that tribes which are determined to have such entitlement adopt and file with the court and defendants tribal regulations for the nonanadromous fishing activities of their mem-

bers specifying the areas to be opened to such fishing. Any party disputing a tribe's claim of treaty entitlement or the recognition of specific usual and accustomed places shall cooperate in allowing the matter of final determination of such matters to be made promptly and as rapidly as the court calendar and the interests of justice permit.

459 F. Supp. at 1037.

The Superior Court held, in reversing the District Court, that this language requires that before an individual tribal member entitled to treaty rights may assert the affirmative defense that he was fishing in usual and accustomed fishing grounds of his tribe, a preliminary determination of such off–reservation rights must be made in federal court. This was error.

■ The court's order in 459 F. Supp. at 1035–38 must be construed in the context of *United States v. Washington,* 384 F. Supp. 312. In that case the court also closed all off–reservation fishing areas "except to the extent that tribes adopt and file with the court and the defendants tribal regulations for the fishing activities of their members and specifying the areas to be opened to fishing by tribal members." 384 F. Supp. at 420. The opinion also expressly stated:

> [A]ny tribal member fishing in a location other than as reported by his tribe, is acting in violation of the orders and decision of this court. If such tribal member is also fishing in violation of state law, he or she is subject to state arrest and criminal prosecution; *provided, that if the defendant proves he was fishing at a usual and accustomed ground or station of his tribe, although not previously designated as such, it shall be a defense to any such prosecution.*

(Italics ours.) 384 F. Supp. at 408 (ruling on Fisheries' question per reconsideration motion). Similarly, treaty fishermen may raise a treaty defense when charged with unlawful possession of shellfish even though their tribe has not received a preliminary determination of such right in federal court and adopted and filed with the court shellfish regulations.

The language in 459 F. Supp. at 1037 appears to require the treaty tribes to adhere to a specific procedure prior to exercising their "power to regulate their own members and to arrest violators of their regulations apprehended on their reservations or at usual and accustomed fishing sites." *United States v. Washington,* 520 F.2d 676, 686 (9th Cir. 1975), *cert. denied,* 423 U.S. 1086 (1976); *see Settler v. Lameer,* 507 F.2d 231 (9th Cir. 1974). This would not affect or restrict individual tribal members' substantive rights under their tribe's treaty rights. That prior adjudication of a treaty right is not a prerequisite to the assertion of a treaty defense is further evident by the fact that the treaties are self–enforcing and became obligatory on the parties when ratified. *See Washington v. Washington State Comm'l Passenger Fishing Vessel Ass'n,* 443 U.S. 658, 693 n.33, 61 L. Ed. 2d 823, 99 S. Ct. 3055 (1979); *United States v. Winans,* 198 U.S. 371, 49 L. Ed. 1089, 25 S. Ct. 662 (1905).

Therefore, the Superior Court erred in holding that absent a prior adjudication of the right to take shellfish, the defendants are barred from asserting a treaty right to take shellfish as an affirmative defense to state criminal charges of taking shellfish in excess of state limits.

■ However, the assertion of treaty rights as an affirmative defense must be proved by the one who asserts it. *State v. Petit,* 88 Wn.2d 267, 269, 558 P.2d 796 (1977).

An affirmative defense to a criminal charge, therefore, must be proved by one who relies on it. *State v. Razey,* 54 Wn.2d 422, 341 P.2d 149 (1959); *State v. Brown,* 97 R.I. 95, 196 A.2d 138 (1963); 29 Am. Jur. 2d *Evidence* § 156 (1967). If one accused of violating the state's fishing laws and regulations claims a treaty exemption to their operation, his claim constitutes an affirmative defense and he has the burden of showing by a preponderance of the evidence the existence of the treaty, that he is a beneficiary of it and that the treaty as a matter of law bars as to him the operation and enforcement of the fishing laws and regulations.

*State v. Moses,* 79 Wn.2d 104, 110, 483 P.2d 832 (1971),

*cert. denied,* 406 U.S. 910, 31 L. Ed. 2d 822, 92 S. Ct. 1612 (1972).

Here, the only factual dispute was whether Adelaide Beach is a usual and accustomed ground and station of the Muckleshoot Tribe. The trial court found that it was. The defendants presented testimony of two elderly tribal members (born in 1898 and 1914), who testified that since they were children they either clammed at or were present while others clammed at Adelaide Beach. They also testified that the Muckleshoot people regularly dug clams from Saltwater State Park to Brown's Point which included Adelaide Beach. The defendants further presented the expert testimony of Dr. Barbara Lane, an anthropologist, who testified that the Muckleshoot Indians at treaty times were accustomed to go to the clam beaches roughly between Alki Point and Brown's shore and that one of these beaches was Adelaide Beach. The testimony of Dr. Lane was based on substantial documentary evidence. The State presented no evidence that Adelaide Beach was not a usual and accustomed fishing ground and station of the Muckleshoot Tribe. This was sufficient to establish by a clear preponderance of the evidence that Adelaide Beach was and is a usual and accustomed fishing ground of the Muckleshoot Indian Tribe. "In determining usual and accustomed fishing places the court cannot follow stringent proof standards because to do so would likely preclude a finding of any such fishing areas." *United States v. Washington,* 459 F. Supp. at 1059. The trial court properly dismissed the criminal proceedings against the defendants.

The decision on RALJ appeal entered by the Superior Court is reversed and the decision of the District Court reinstated.

DURHAM, C.J., and SWANSON, J., concur.