[No. 34477-3-I. Division One. August 25, 1997.]

THE STATE OF WASHINGTON, *Respondent,* v. GLYNN TAL PRICE, *Appellant.*

*Douglas J. Ende* and *Ende, Subin & Philip,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Laura D. Hayes, Deputy;* and *Christine O. Gregoire, Attorney General,* and *Jay D. Geck, Assistant,* for respondent.

GROSSE, J. — A non-Indian spouse of a Yakama[1] tribal member is prohibited from fishing in a treaty Indian fishery unless he or she is assisting a treaty Indian fisherman who is present at the site. The State's statute so providing is consistent with the signal cases interpreting Indian treaty fishing rights, the pertinent provisions of the Yakama tribal code, and other applicable federal law. Glynn Tal Price's spouse, a member of the Yakama tribe, was not present at the time he was fishing in a treaty Indian fishery. We affirm his convictions and sentence.

## FACTS

Glynn Tal Price was charged by the State with three

---

[1] In 1994, the Yakima Indian Nation adopted the spelling of Yakama, which we will use throughout this opinion.

counts of unlawful participation in fishing by a non-Indian in a treaty Indian fishery. The charges were filed after a two-year investigation by State Fish and Wildlife officials, based on the allegations that on three separate days in late August and early September of 1990, Price, a non-Indian, illegally sold sockeye salmon from catch area 7A[2] at a time when the fishery was open only to treaty Indian fishermen.

By stipulation, Price concedes he is not a member of an Indian tribe; however, he is married to a member of the Yakama Indian Nation. His spouse, Sherry Wilson Price, owns the boat from which Price fished. Price used a state-issued commercial fishing license containing a tribal code to sell his catches. There is no dispute that a tribal code on the face of the license allocated the catch to the Yakama tribe because the boat is owned by a member of the tribe.

Before trial, Price moved to dismiss based on the fact that he was exercising his wife's treaty fishing rights in a usual and accustomed fishing site of the Yakama Nation. He also alleged that he was duly licensed pursuant to a validly issued operator's license issued by the State which, as a non-Indian spouse of an Indian, entitled him to fish in treaty tribal fisheries. The trial court denied the motions.

Price claims he was "assisting" his Indian spouse in exercising her tribal fishing rights and that the statute's requirement that a treaty right Indian be present is an unlawful limitation in the exercise of state regulatory authority and is not required under the *Boldt*[3] decision. He also alleges that the unlawful participation statute is an unconstitutional delegation of legislative authority and is void for vagueness.

The State claims the statute's requirement that a treaty

---

[2]Catch area 7A is part of Puget Sound, located off Point Roberts in Whatcom County.

[3]The formal name and cite of the *"Boldt"* decision is *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974). It is commonly referred to, and will be referred to throughout the opinion, as the *Boldt* decision.

Indian fisherman must be present at the off-reservation fishing site before a non-Indian spouse or even nontreaty Indian fisherman can assist is consistent with the policies and directives promulgated in the *Boldt* decision and its progeny. The State further claims that Price lacks standing to challenge the statute and, even if he has standing, Price as a non-Indian may not assist Sherry Price, his Indian spouse, in exercising any Indian treaty fishing rights she does not possess, with or without her presence.[4]

The jury found Price guilty as charged. The court sentenced him to six months in jail on each count, to be served concurrently, and ordered him to pay $30,000 in fines, $10,000 on each count. By agreement, the court stayed the sentence pending appeal.

## DISCUSSION

RCW 75.12.320 forbids participation by a non-Indian in Indian fisheries. It states in pertinent part:

(1) Except as provided in subsection (2) of this section, it is unlawful for a person who is not a treaty Indian fisherman to participate in the taking of food fish or shellfish in a treaty Indian fishery, or to be on board a vessel, or associated equipment, operating in a treaty Indian fishery.

(2)(a) The spouse, forebears, siblings, children, and grandchildren of a treaty Indian fisherman may assist the fisherman in exercising treaty Indian fishing rights when the treaty Indian fisherman is present at the fishing site.

(b) Other treaty Indian fishermen with off-reservation treaty fishing rights in the same usual and accustomed places, whether or not the fishermen are members of the same tribe or another treaty tribe, may assist a treaty Indian fisherman in exercising treaty Indian fishing rights when the treaty Indian fisherman is present at the fishing site.

. . . .

---

[4]The State's position is that the Yakamas did not possess treaty fishing rights in catch area 7A.

(3) For the purposes of this section:

(a) "Treaty Indian fisherman" means a person who may exercise treaty Indian fishing rights as determined under United States v. Washington, 384 F. Supp. 312 (W.D. Wash. 1974), or Sohappy v. Smith, 302 F. Supp. 899 (D. Oregon 1969), and post-trial orders of those courts;

(b) "Treaty Indian fishery" means a fishery open to only treaty Indian fishermen by tribal or federal regulation;

(c) "To participate" and its derivatives mean an effort to operate a vessel or fishing equipment, provide immediate supervision in the operation of a vessel or fishing equipment, or otherwise assist in the fishing operation, or to claim possession of a share of the catch.

(4) A violation of this section involving salmon constitutes illegal fishing and is subject to the sanctions provided under RCW 75.10.130.

(Emphasis added.)

■■■■ The State argues that Price lacks standing to challenge the statute as it does not prejudice his own rights, because admittedly he does not possess Indian treaty fishing rights. We agree in part. The standing doctrine prohibits a litigant from raising another's legal rights, and Price does assert some rights through his Indian spouse. However, Price was charged under the statute because his wife was not present. He is the defendant charged with a crime. Therefore, he is adversely affected or prejudiced by application of the statute and is able to question its validity to the extent he raises issues pertaining to his assistance of his spouse.[5]

The State's blanket reliance on *State v. Bohannon*,[6] which prohibits a party from having standing to challenge a statute on the basis that its operation has prejudiced an-

---

[5]See *Walker v. Munro*, 124 Wn.2d 402, 419, 879 P.2d 920 (1994); *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 138, 744 P.2d 1032, 750 P.2d 254 (1988).

[6]*State v. Bohannon*, 62 Wn. App. 462, 469, 814 P.2d 694 (1991).

other person, is incorrect in its application here. Price is not solely claiming prejudice to his wife's off-reservation fishing rights, but to the fact that he is charged with the conduct statutorily prohibited. However, the State is correct in that, contrary to a portion of Price's argument, Price lacks the standing to argue that the statute violates his spouse's off-reservation treaty fishing rights.

Price challenges the statutory "presence" limitation on spousal assistance contained in the statute. He contends that the Indian presence requirement of the statute constitutes an unlawful regulatory burden on treaty Indian fishing rights. The language of the "Treaty with the Yakimas of June 9, 1855" reserved the right to fish off-reservation for salmon and steelhead to the treaty Indians in their "usual and accustomed places, in common with citizens of the territory." Price correctly notes that due to language barriers and other reasons present at the time of the signing of the treaties, courts are required to construe the treaties liberally in favor of the Indians and all ambiguous expressions should be resolved in the Indians' favor.[7] " '[T]he treaty must therefore be construed, not according to the technical meaning of its words to learned lawyers, but in the sense in which they would naturally be understood by the Indians.' "[8] The question is whether the term "assist" as used in RCW 75.12.320(2)(a) precludes the State from requiring the treaty Indian's presence at the fishing site during the catch.

■■ In its amended opinion, the *Boldt* court sought to clarify whether a person who is not an enrolled member of a particular treaty tribe may exercise or assist in the exercise of a treaty fishing right, or on behalf of a member of such tribe.[9] The court stated:

> A treaty right fisherman may secure the assistance of other

---

[7]*See United States v. Winans*, 198 U.S. 371, 380-81, 25 S. Ct. 662, 49 L. Ed. 1089 (1905); *see also Boldt*, 384 F. Supp. at 331 (quoting *Winans*).

[8]*Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 676, 99 S. Ct. 3055, 61 L. Ed. 2d 823 (1979) (citation omitted).

[9]*Boldt*, 384 F. Supp. at 412.

tribal fishermen with off reservation treaty fishing rights in the same usual and accustomed places, whether or not such fishermen are members of the same tribe or another treaty tribe. A treaty right fisherman may also be assisted by his or her spouse (whether or not possessing individual treaty rights), forebears, children, grandchildren and siblings.[10]

Price claims a liberal interpretation of the treaty and the *Boldt* opinion disallows the presence requirement of the statute because such a requirement is nowhere stated or implied, and it restrains the manner of the exercise of treaty fishing rights without any showing of conservation necessity.[11] We disagree.

The *Boldt* opinion allowed the State to regulate the right of a treaty tribe to take fish as an appropriate exercise of its power, provided such regulation met certain criteria or standards, including conservation. The *Boldt* decision is a reasonable attempt to set forth the rights of the Indians under the treaties at the time of their making. The opinion set out the rights as agreed to by the United States government as negotiated by the territorial governor and others. Overall, in recognition of their hunting, fishing, and gathering history, as well as the Indian right to food and ceremonial use of fish, the treaties and the *Boldt* opinion sought to enumerate and protect Indians' rights from non-Indian people, and from each other.[12] The opinion limits the State's power to ensure that the Indians received their treaty right to their fair share of commercial fishing and other rights to fish. Additionally, the exercise of the tribes' rights to take anadromous fish outside of reservation boundaries is limited by

---

[10]*Boldt,* 384 F. Supp. at 412.

[11]Price cites to United States Supreme Court decisions recognized in the *Boldt* decision which set forth that the exercise of tribal off-reservation fishing rights may be regulated by the State only when strictly necessary for conservation of the fish resource.

[12]The "others" here are the different treaty tribes who did not have usual and accustomed rights to fish in a particular catch area. Therefore, fishing in those areas would constitute encroaching and/or poaching in another tribe's usual and accustomed catch area.

the geographical extent of the usual and accustomed places of fishing, limits of harvestable stock, and the number of fish which nontreaty fishermen have the opportunity to catch.

RCW 75.12.320 was promulgated in order to guarantee protection of Indian treaty rights, and we hold that the Indian's presence with the non-Indian is a reasonable limitation. If Sherry Wilson Price possesses any rights in this catch area, her independent grant of tribal fishing privileges to her forebears, her spouse, siblings, children, and grandchildren without her presence is not contemplated by the treaties or the decision, and her rights are realistically limited to those occasions where she is present at the time and place she is being "assisted." The nature of fishing is that it is an instantaneous transaction in that the fish are caught at a given moment in time. Thus, in order to assist in fishing, the person assisted or assisting must be present at the catch. This limitation on non-Indian fishing during treaty Indian fisheries promotes an equitable distribution of fishery resources to both Indian and non-Indian fishermen, while discouraging non-Indian fishing under a guise of "transferable" treaty right assistance.[13]

In adopting the statute in question, the Legislature's rationale was that non-Indian fishing in tribal fisheries affects the allocations of fish to treaty Indian fishermen and others, and therefore violates federal law.[14] Limiting the non-Indian fisherman spouse's right to fish in Indian treaty fisheries to times when the Indian spouse is present is consistent with federal interpretation. For example, under 50 C.F.R. § 371.7(c) (1994),[15] a non-Indian fisherman may assist a treaty Indian fisherman when the treaty

---

[13]See State v. Price, 94 Wn.2d 810, 819-20, 620 P.2d 994 (1980) (discussing the policy of appropriate allocation in regard to forged steelhead tags).

[14]1982 FINAL LEGISLATIVE REPORT, 47th Wash. Reg. & 1st Spec. Sess. at 165-66.

[15]We recognize that this C.F.R. was adopted after the date of the charged criminal conduct, and cite it only to illustrate other similar interpretations or limitations.

Indian fisherman is aboard the fishing vessel and exercising his or her own treaty Indian fishing rights. In addition, the Chair of the Yakama Tribal Council Fish Committee swore that the first date on which the Yakama Indian Nation authorized the exercise of Nation fishing rights in northern Puget Sound was in November of 1991. He stated there were no Yakama tribal openings in Puget Sound during 1990. Further, he declared that under REVISED YAKAMA INDIAN NATION LAW & ORDER CODE § 32.01.17(8), persons who are not members of the Yakama tribe may not operate or assist Yakama tribal members in operating fishing gear being used for fishing purposes under Title 32, Fish and Wildlife, of the Yakama Code. There was also an amicus brief filed by the Lummi tribe, stating the Yakamas have never fished in this catch area.

We hold that requiring the presence of the Indian spouse is consistent with the policies and interpretation of the treaties promulgated in the *Boldt* decision, under federal regulations, and under the regulations of the Yakama tribe. We reject Price's interpretation of the term "assist" in the statute.

As stated previously, Price claims he was assisting in the exercise of treaty rights possessed by his spouse. Price has never argued or alleged that he is a treaty Indian fisherman, but only that he is married to a tribal member. He has no standing to assert her fishing rights, Given our determination that the limitation requiring the Indian spouse's presence is valid, and that Price admits his Indian spouse was not present, we need not address whether his spouse possessed treaty rights in the area in which he illegally fished.[16]

A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

---

[16]In view of our disposition of this matter with regard to standing, we similarly do not reach Price's other issues except as relevant to his conviction for unlawful participation.

WEBSTER and Cox, JJ., concur.

Reconsideration denied September 19, 1997.