223 P.3d 533 (2009)
STATE of Washington, Respondent,
v.
Larry Patrick GUIDRY, Jr., Appellant.
No. 37301-7-II.
Court of Appeals of Washington, Division 2.
December 22, 2009.
*534 Thomas Edward Doyle, Attorney at Law, Hansville, WA, for Appellant.
Carol L. La Verne, Thurston County Prosecutor's Office, Loreva Marie Preuss, Department of Fish and Wildlife, Olympia, WA, for Respondent.
Bill Tobin, Attorney at Law, Vashon, WA, Amicus Curiae on behalf of Nisqually Indian Tribe.
HOUGHTON, J.
¶ 1 Larry Guidry appeals his convictions for first degree fish dealing without a license, first degree fish trafficking without a license, four counts of participation of a non-Indian in an Indian fishery for commercial purposes, and four counts of first degree commercial fishing without a license. He argues that the trial court should have dismissed the charges against him because he lawfully fished under the Nisqually Tribal Code. He also argues that insufficient evidence supports his convictions for fish dealing and fish trafficking and that the trial court erred in imposing restitution. We reverse his convictions, vacate the restitution order, and remand.

FACTS
¶ 2 Guidry lives on the Nisqually Indian Reservation with his wife, Lorena.[1] Lorena is a member of the Tribe, but Guidry is not.
¶ 3 In 1854, the Tribe signed the Treaty of Medicine Creek. 10 Stat. 1132 (1854). The Treaty preserves the Tribe's right to fish on the Reservation and on all usual and accustomed places. United States v. Washington, 384 F.Supp. 312, 369 (W.D.Wash.1974) (the Boldt decision). The Tribe's usual and accustomed fishing places include the saltwater areas located at the mouth of the Nisqually River and the surrounding bay and the freshwater courses of the Nisqually River and its tributaries. Boldt, 384 F.Supp. at 369.
¶ 4 On January 11, 2005, Fish and Wildlife Officer Carl Klein observed Guidry and a companion outside Reservation boundaries standing with signs advertising fresh salmon for sale. They offered to sell Klein salmon and he declined. Klein then asked if either man had a State license to sell salmon and Guidry produced a spousal Treaty card.[2] Guidry did not have a State-issued wholesale or commercial license and he has never possessed one.
¶ 5 Between December 18 and 21, 2005, wildlife officers observed Guidry fishing on the Nisqually River. On those four days, Guidry launched his boat into the Nisqually River from the Riverbend Campground using a gill net. That campground is not on Reservation land, but it is within the Tribe's usual and accustomed fishing places on the Nisqually River. On each of the four days, Guidry unloaded a commercial quantity of fish from his boat and sorted it in a commercial manner by gender. He did not have anyone on the boat with him during the four days nor did anyone help him with the boat, the nets, or loading and unloading the fish.
¶ 6 Guidry filled out three Treaty Indian Fish Receiving tickets[3] using Lorena's Treaty *535 card. The tickets showed that on (1) December 18, he sold $684.80 worth of chum salmon, (2) December 19, he sold $355.60 worth of chum salmon, and (3) December 20, he sold $587.65 worth of chum salmon. The December 18 ticket indicated that he used a drift gillnet and that the catch occurred on the Reservation. The December 19 and 20 tickets indicated that he used a set gill net and that the catches occurred off the Reservation. Nothing on the tickets suggested that he had fished outside of the usual and accustomed fishing places on the Nisqually River. He signed each ticket as the fisher.
¶ 7 The State charged Guidry with first degree unlicensed fish dealing (count I); first degree unlawful trafficking in fish, shellfish, or wildlife (count II); four counts of participation of non-Indian in an Indian fishery for commercial purposes (counts III-VI); and four counts of first degree commercial fishing without a license (counts XII-X).[4] He waived his right to a jury in favor of a bench trial.
¶ 8 At trial, Klein testified that a "commercial quantity" of fish caught with a gill net is six or more adult salmon. Report of Proceedings at 66, 75. He stated that he had observed Guidry unload between 50 to 100 salmon, each weighing an average of 10 pounds, on December 18. Although Klein did not know the usual sales price per pound for the fish, he stated that the fish Guidry caught on December 18 and 19 were worth more than $250.
¶ 9 Guidry testified and admitted to catching and selling fish, but he said that the Tribe's spousal fishing permit allowed him to do so. He stated that his wife helped him prepare, process, and smoke the fish. She also checked on him periodically at the boat launch. Guidry used the money from the fish sales to provide for his family. He stated that he fished mostly on the Reservation and did so between December 18 and December 21, 2005. He testified that his wife was not with him when he was fishing between December 18 through December 20.[5]
¶ 10 The trial court found Guidry guilty on all counts and he appeals.

ANALYSIS

Counts I and II
¶ 11 Guidry first contends that insufficient evidence supported his convictions for first degree fish dealing without a license (count I) and first degree unlawful trafficking in fish (count II). Both convictions relate to his January 11, 2005 conduct when he sold fish on the side of the road outside Reservation land.
¶ 12 Sufficient evidence supports a conviction when any rational fact finder could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. State v. Thomas, 150 Wash.2d 821, 874, 83 P.3d 970 (2004), aff'd, 166 Wash.2d 380, 208 P.3d 1107 (2009). An insufficiency of the evidence claim admits the truth of the State's evidence and all reasonable inferences drawn from it. Thomas, 150 Wash.2d at 874, 83 P.3d 970.
¶ 13 In order to convict Guidry for first degree fish dealing without a license, the State had to prove beyond a reasonable doubt that he had engaged in wholesale selling, buying, or brokering of fish without a license and that the fish were worth $250 or more. RCW 77.15.620(3). In order to convict Guidry of first degree trafficking in fish, the State had to prove, among other elements, that the fish were worth $250 or more. RCW 77.15.260(2).
*536 ¶ 14 At trial, the State established that Klein had observed Guidry and a companion on the side of a road with a sign advertising fish for sale and that Guidry had asked Klein if he would like to buy any salmon. The State produced no evidence as to the value of the fish, and it failed to sufficiently establish all the essential elements to convict Guidry on counts I and II. Thus, we reverse and remand with instructions to dismiss counts I and II with prejudice.[6]See State v. Stanton, 68 Wash.App. 855, 867, 845 P.2d 1365 (1993) (insufficient evidence as a matter of law requires dismissal with prejudice).

Counts IIIX
¶ 15 Guidry next contends that counts III through X should be dismissed because he lawfully fished under Tribal Code 14.20.01; RCW 77.15.570 unlawfully curtails his rights under the Tribal Code; and the State did not establish beyond a reasonable doubt that from December 18 through December 21, 2005, he fished outside the Tribe's usual and accustomed places on the river.[7] The State counters that Guidry was not lawfully fishing under the Tribal Code because his member spouse was not present at the fishing site with him and federal court decisions and Tribal regulations do not allow a non-member to exercise a tribal member's treaty rights.
¶ 16 The Tribal Code and Washington law contain conflicting language. Under the Tribal Code, the Tribe's right to fish in its usual and accustomed fishing places on the Nisqually River may be exercised by "enrolled members or their authorized assistants" as established under Tribal Code 14.20.01; Boldt, 384 F.Supp. at 412. The Tribal Code allows a non-member spouse to fish on behalf of the member without that member present in the boat while in usual and accustomed places on the Nisqually River.[8] Tribal Code 14.20.01(d)(i)(A). The Tribal Code further provides that a non-member spouse may assist an enrolled member on Reservation fishing sites or within the Tribe's usual and accustomed off-Reservation fishing sites, including the Nisqually River. Tribal Code 14.20.01(c)-(d). The Tribal Code defines "exercise or assist in the exercise of any fishing right" as
to handle or operate any boat or other vessel used in fishing, to handle or operate any net, device used in the operation of any net, or any other gear used in fishing; or to use a treaty fisherman or other Indian identification card in fishing or in the sale, trading or peddling of fish.
Tribal Code 14.19.03(a).
¶ 17 Neither party disputes that between December 18 and December 21, 2005, Guidry confined his fishing to the Reservation and/or usual and accustomed places on the Nisqually River. On these days, he fished without his tribal member spouse on the boat or at the fishing site. He assisted his tribal member spouse to exercise her fishing rights by operating a boat and nets for fishing purposes in her absence. He also possessed a fishing identification spouse card as the Tribal Code required. Tribal Code 14.21.01(b). Thus, he lawfully fished under the Tribal Code's broad definition of "assist."
¶ 18 Under RCW 77.15.570, however, spouses of a "treaty Indian fisherman may assist the fisherman in exercising treaty Indian fishing rights when the treaty Indian fisherman is present at the fishing site." RCW 77.15.570(3)(a) (emphasis added). The State asserts that we must apply RCW 77.15.570(3)(a) and not the Tribal Code. To support its argument, the State relies in part on State v. Price, 87 Wash.App. 424, 942 P.2d 377 (1997), and urges us to follow it.
¶ 19 In Price, the trial court found a non-member spouse of a Yakama Indian Nation (Yakama) member guilty of participating in fishing by a non-Indian in an Indian fishery. *537 87 Wash.App. at 425-26, 942 P.2d 377. Price did not, however, involve a conflict between RCW 77.15.570 and the Yakama Tribal Code because the code itself prohibited non-members from operating or assisting members. 87 Wash.App. at 431-32, 942 P.2d 377. Additionally, the Chair of the Yakama Tribal Council Fish Committee explained that the Yakama do not authorize tribal fishing in the northern Puget Sound where Price fished. Price, 87 Wash.App. at 431-32, 942 P.2d 377. Here, in contrast, the Tribal Code allows fishing by nonmember spouses in certain circumstances. And the Tribe asserts that Guidry lawfully fished under its Tribal Code. Thus, Price does not apply here.
¶ 20 Next, we must decide whether RCW 77.15.570's requirement that Guidry's tribal member spouse be present at the fishing site is proper under Boldt. Boldt unequivocally states, "A treaty right fisherman may also be assisted by his or her spouse (whether or not possessing individual treaty rights), forebears, children, grandchildren and siblings." 384 F.Supp. at 412. Boldt also provides that the State cannot deny or qualify treaty fishing rights except when reasonable and necessary for conservation. 384 F.Supp. at 333, 342. In order to show that a State regulation is a lawful exercise of the State's power, Boldt notes that
[e]very regulation of treaty right fishing must be strictly limited to specific measures which before becoming effective have been established by the state, either to the satisfaction of all affected tribes or upon hearing by or under direction of this court, to be reasonable and necessary to prevent demonstrable harm to the actual conservation of fish.
384 F.Supp. at 342.
¶ 21 Thus, we hold that if a non-member spouse assists the member spouse to fish on the Reservation or at the Tribe's usual and accustomed fishing places in a manner approved in the Tribal Code, the State cannot impose different conditions unless reasonable and necessary for the conservation of the resource. The State has not shown that it is reasonable and necessary here.
¶ 22 State regulations cannot discriminate against Indian fishers. Boldt, 384 F.Supp. at 333. Not allowing Guidry to fish as he did here denies his tribal member spouse's rights. Moreover, because an Indian exercising treaty fishing rights is not required to possess a commercial fishing license, the State cannot require that a non-member spouse possess one when assisting the member spouse. See Boldt, 384 F.Supp. at 358 (treaty Indians are not required to purchase a license or pay a landing tax); State v. Petit, 88 Wash.2d 267, 558 P.2d 796 (1977) (implies that lawful Indian fishing on usual and accustomed fishing places exculpates charge for commercial gillnetting without a license).[9]
¶ 23 Because Guidry lawfully fished under these facts, we reverse his convictions for counts III through X. He also contends that the trial court erred in entering a $10,000 restitution order. Because we reverse his convictions, we vacate the restitution order.
¶ 24 To summarize, we reverse all of Guidry's convictions, vacate the restitution order, and remand.
I concur: VAN DEREN, C.J.
BRIDGEWATER, J. (concurring in part, dissenting in part).
¶ 25 I concur with the majority with regard to counts I and II; the State did not provide sufficient evidence as to the value of the fish Guidry was selling on January 11, 2005, thus those counts should be dismissed. But, the majority holds that Guidry lawfully fished on December 18-21, 2005, and therefore his convictions should be reversed. I respectfully dissent and would affirm Guidry's convictions on counts III through X.
*538 ¶ 26 I would emphasize certain facts that support his conviction:
¶ 27 (1) Guidry is not a tribal member, thus it is his status, not his spouse's, whose rights we determine;
¶ 28 (2) Where Guidry launched his boat and fished was not on the Nisqually Indian Reservation, but was on the Nisqually Tribe's usual and accustomed fishing places;
¶ 29 (3) Guidry's spouse did not accompany him on his boat, nor was she at the location to assist him in landing or transferring or sorting the fish.
¶ 30 This case involves a jurisdictional challenge. Guidry asserts that under the Nisqually Tribal Code (NTC) he was fishing lawfully and that the State of Washington did not have jurisdiction of him even though he was a non-Indian who fished off reservation. I disagree.
¶ 31 The State of Washington usually retains civil and criminal jurisdiction over all non-Indians, whether or not in "Indian country."[10] In matters of tribal fishing and hunting rights, the State cannot enforce its fishing laws against Indians or non-Indians on the tribe's reservation. New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 343-44, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983); see also Wagnon v. Prairie Band Potawatomi Nation, 546 U.S. 95, 118 n. 2, 126 S.Ct. 676, 163 L.Ed.2d 429 (2005). But a tribe may not exercise jurisdiction over non-Indian participation in its treaty fishery on non-reservation lands. Montana v. United States, 450 U.S. 544, 566, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) (Tribe may not regulate non-Indian hunting and fishing on land owned in fee by non-Indians within reservation). Instead, the states regulate non-Indian fishing rights off reservation. Antoine v. Washington, 420 U.S. 194, 206, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975) ("Non-Indians are, of course, not beneficiaries of the preserved rights [to hunt and fish on ceded land] and the State remains wholly free to prohibit or regulate non-Indian hunting and fishing"); Puyallup Tribe v. Dep't of Game, 391 U.S. 392, 398, 88 S.Ct. 1725, 20 L.Ed.2d 689 (1968) (Treaty tribes share the right to fish at usual and accustomed places with non-Indians, whose conduct the State "[c]ertainly" could regulate); Sohappy v. Smith, 302 F.Supp. 899, 908 (D.Or.1969) ("The state may regulate fishing by non-Indians to achieve a wide variety of management or `conservation' objectives. Its selection of regulations ... is limited only by its own organic law and the standards of reasonableness required by the Fourteenth Amendment").
¶ 32 Despite his marriage, Guidry remains a Washington State resident who fished off reservation. While Guidry fished on the tribe's usual and accustomed places, that is not reservation land. The State therefore had jurisdiction over him and could regulate his fishing activities. The majority is correct that Guidry asserts that the NTC provision permits him to fish in the Nisqually River without the presence of his spouse. But, I would not look to any provision of the NTC for control of Guidry's actions. The State of Washington had jurisdiction over Guidry, it is under state law that we must evaluate his actions.
¶ 33 RCW 77.15.570 forbids participation by a non-Indian in Indian fisheries. It states in relevant part:
(1) Except as provided in subsection (3) of this section, it is unlawful for a person who is not a treaty Indian fisherman to participate in the taking of fish or shellfish in a treaty Indian fishery, or to be on board a vessel, or associated equipment, operating in a treaty Indian fishery....
(2) A person who violates subsection (1) of this section with the intent of acting for commercial purposes, including any sale of catch, control of catch, profit from catch, or payment for fishing assistance, is guilty of a class C felony.
...
(3)(a) The spouse, forebears, siblings, children, and grandchildren of a treaty Indian fisherman may assist the fisherman in exercising treaty Indian fishing rights when the treaty Indian fisherman is present at the fishing site.
*539 RCW 77.15.570(1)-(3)(a). "`To participate'" means
an effort to operate a vessel or fishing equipment, provide immediate supervision in the operation of a vessel or fishing equipment, or otherwise assist in the fishing operation, to claim possession of a share of the catch, or to represent that the catch was lawfully taken in an Indian fishery.
RCW 77.15.570(4)(c).
¶ 34 Guidry takes an absurd stance that a spouse can "assist" under this statute by staying home if she gave her permission to fish. A spouse may assist a treaty fisherman if the treaty fisherman is present at the fishing site. RCW 77.15.570(3)(a). Chapter 77.15 RCW does not define "assist" or "fishing site." This court reviews issues of statutory interpretation de novo. State v. Alvarado, 164 Wash.2d 556, 561, 192 P.3d 345 (2008). If the plain language is subject to only one interpretation, this court's inquiry ends because plain language does not require construction. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). Absent ambiguity or a statutory definition, this court gives the words in a statute their common and ordinary meaning. Garrison v. Wash. State Nursing Bd., 87 Wash.2d 195, 196, 550 P.2d 7 (1976). To determine the plain meaning of an undefined term, this court may look to the dictionary. Garrison, 87 Wash.2d at 196, 550 P.2d 7.
¶ 35 "Assist" means "to give support or aid: HELP ... to be present as a spectator... to give support or aid to esp. in some undertaking or effort ... to perform some service for ... to take one's place with: JOIN, ATTEND." Webster's Third New International Dictionary 132 (2002) (emphasis added). With terms like "present," "take one's place with," and "JOIN," a physical presence at the event, rather than moral or emotional support, is required.
¶ 36 A "fishing site" is also not so expansive as to include support given from home as Guidry contends. Br. of Appellant at 18. Under former RCW 77.08.010(46) (2008), a person fishes if he or she undertakes "an effort to kill, injure, harass, or catch a fish or shellfish." A "site" is "the scene of an action... or specified activity." Webster's, supra, at 2128. A fishing site is therefore the physical location where a person undertakes an effort to kill, injure, harass, or catch fish or shellfish. This can include the boat launch at the campground or the boat itself. This definition of "assist" and the requirement of physical presence at the actual location is also consistent with a Division One opinion interpreting the same statutory provision.
¶ 37 In State v. Price, 87 Wash.App. 424, 431, 942 P.2d 377 (1997), review denied, 137 Wash.2d 1004, 972 P.2d 465 (1999), Division One of this court considered whether former RCW 75.12.320 (1984)[11], recodified as RCW 77.15.570, Laws of 1998, ch. 190, § 125, required the physical presence of the person assisted by or assisting a tribal fisherman in the exercise of his or her treaty rights. In Price, the defendant was a non-Indian married to a member of the Yakama Indian Nation. Price, 87 Wash.App. at 425, 942 P.2d 377. The State charged him with three counts of unlawful participation in fishing by a non-Indian in a treaty Indian fishery. Price, 87 Wash.App. at 425-26, 942 P.2d 377. He argued, in part, that he was assisting his wife in exercising her treaty fishing rights even though she was not present at the time he was fishing in an Indian fishery. Price, 87 Wash.App. at 425-26, 942 P.2d 377. Price contended that the State could not add a "presence" requirement to a treaty fisherman's right to assistance because the Boldt[12] opinion, which recognized the right of treaty fishermen to secure the assistance of his or her spouse, did not contain that requirement. Price, 87 Wash.App. at 430, 942 P.2d 377.
¶ 38 Division One rejected his argument, holding that the Boldt opinion allowed the State to regulate the right of a treaty tribe to take fish if such regulation met certain criteria or standards, including conservation. Price, 87 Wash.App. at 430, 942 P.2d 377. *540 The court held that former RCW 77.12.320 was promulgated to protect Indian treaty rights, and that "the Indian's presence with the non-Indian is a reasonable limitation." Price, 87 Wash.App. at 431, 942 P.2d 377. The treaty did not contemplate a treaty fisherman granting his or her rights to a non-tribal member relative. Price, 87 Wash.App. at 431, 942 P.2d 377. Accordingly, the court held that in order to "assist," the assisted or assisting "must be present at the catch." Price, 87 Wash.App. at 431, 942 P.2d 377.
¶ 39 The state statute is also consistent with federal regulations. The Price court noted that 50 C.F.R. § 371.7(4) (1994) permitted a non-Indian to assist a treaty fisherman when the treaty Indian fisherman is aboard the fishing vessel and exercising his or her own Indian fishing rights. Price, 87 Wash.App. at 431-32, 942 P.2d 377. Similarly, 50 C.F.R. § 300.95(d)(1) requires the presence of the treaty Indian on the fishing vessel.
¶ 40 Further, RCW 77.15.570 is consistent with the policies and interpretation of treaties in the Boldt decision. The Boldt decision attempted to set forth the rights of Indians under the treaties at the time of their making. Price, 87 Wash.App. at 430, 942 P.2d 377. The opinion sought to protect Indians' rights from non-Indians and other treaty tribes. Price, 87 Wash.App. at 430 n. 12, 942 P.2d 377. By limiting the participation of non-Indians off reservation, RCW 77.15.570 assists Indians in protecting their fishing rights. Requiring the physical presence of an Indian with a non-Indian assistant does not unreasonably burden Indian fishing rights. Price, 87 Wash.App. at 431, 942 P.2d 377.
¶ 41 The majority notes that the NTC and Washington law contain conflicting language. It then relies upon the NTC to resolve the conflict. The majority also rejects Price because the Yakama Tribal Code differed from the NTC in that the Yakama Code did not permit non-members to assist members and it did not authorize tribal fishing where Price fished. The majority is correct in its reading of Price, but not in its import. The majority's determination turns the law on its head. The question to be asked here is, "Does the Nisqually Tribe have jurisdiction over a non-tribal member off the reservation?" It is without question that the NTC can control what a non-tribal member can do on the reservation in permitting fishing or assisting a tribal spouse. Mescalero, 462 U.S. at 343-44, 103 S.Ct. 2378. But it is quite another proposition to say that the NTC can provide a defense or add an element to an offense in the state of Washington.
¶ 42 The NTC and interpretations of "assisting" may provide some guidance for our understanding as to how the tribe considers the matter and its fishing rights when its tribal members are off the reservation, but it has no applicability to non-tribal members. Washington has jurisdiction over non-tribal members in its waters. RCW 77.15.570 is an act passed to preserve Indian fishing rights in non-reservation areas. It is what should control our consideration. We do not have to resolve any conflicts with the NTC because it is not competing with our state law. For instance, if the matter were to be tried to a jury, the instructions regarding the definition of "to assist" would not be taken from the NTC, but from the RCW and its interpretation. To do otherwise would be to acknowledge that the NTC had jurisdiction over non-tribal members in the state of Washington. As an analogy, Canadian law could not add elements to a crime or provide a defense to a criminal act in Washington for the spouse of a Canadian citizen just because at one time what is now northern Washington was under the control of the British government.
¶ 43 The above rationale is precisely why Price is relevant and I would adopt its reasoning and interpretation of RCW 77.15.750. Of course, there are differences in the facts of the cases, but the positions of the tribes is not the deciding factor as to whether Price applies.
¶ 44 Also, in the last sentence on page 537, the majority's holding and its citations reveal the majority's misapprehension. When it posits that the State cannot require a non-member spouse to possess a commercial fishing license, it cites cases that only concern the rights of an Indian; those cases do not concern a non-member's duty when off reservation. Boldt, 384 F.Supp. at 357; State v. *541 Petit, 88 Wash.2d 267, 268-69, 558 P.2d 796 (1977). Guidry was not assisting his spouse under RCW 77.15.570(3), he does not possess treaty fishing rights, he was not exercising his wife's treaty fishing rights, and he was commercial fishing without a license. I would affirm counts III-X.
¶ 45 Finally, even though I would affirm Guidry's convictions for counts III-X, I would reverse the order of restitution because there was no casual connection between the acts and the restitution imposed. State v. Hunotte, 69 Wash.App. 670, 675, 851 P.2d 694 (1993). The amount was computed using Guidry's alleged income in March 2005. That occurred before his December 2005 acts that lead to the instant convictions on counts III through X.
NOTES
[1] We refer to Lorena by her first name for clarity, intending no disrespect.
[2] The Tribal Code requires that tribal members and their spouses possess a Tribe-issued fishing identification card to exercise their fishing rights. Tribal Code 14.20.01(b).
[3] A Treaty Indian Fish Receiving ticket is a receipt from the sale of salmon. Copies of tickets go to the Tribe and to the State for salmon management purposes.
[4] The State also charged Guidry with obstructing a law enforcement officer (count XI). When law enforcement officers attempted to arrest him on December 21, 2005, he resisted by grabbing his truck's steering wheel. The arresting officers had to forcibly remove him from his truck and handcuff him. The trial court found him guilty on this count, and he does not challenge this conviction.
[5] Lorena testified that she does not go with Guidry when he fishes because fishing season occurs during cold winter months and the boat is too small for both of them. She also said she stayed on Reservation land on December 20 and 21, 2005, but she did not on December 18 and 19, 2005.
[6] Guidry also contends that his count I and II convictions violate double jeopardy. Because we reverse these convictions for insufficient evidence, we do not address this issue.
[7] The Tribe filed a amicus curiae brief, which states that Guidry lawfully fished between December 18 and December 21, 2005.
[8] But both the non-member spouse and the member must be present on the boat in any other usual and accustomed fishing places. Tribal Code 14.20.01(d)(i)(B).
[9] The dissent disagrees with our reasoning here and asserts that our reliance on cases dealing only with Indians is in error. This goes to the heart of our disagreement. In the unique situation where a non-tribal member spouse assists the tribal member spouse to exercise his/her treaty fishing rights, all protections afforded under Boldt must necessarily extend to the assisting non-member spouse. To hold otherwise would effectively limit the tribal member's unequivocal fishing rights under Boldt.
[10] "Indian country" includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government." 18 U.S.C. § 1151.
[11] Former RCW 75.12.320(1) and (2)(a) mirror the language of RCW 77.15.570(1) and (3)(a).
[12] United States v. Washington, 384 F.Supp. 312 (W.D.Wash. 1974), aff'd, 520 F.2d 676 (9th Cir. 1975), cert. denied, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976) (Boldt opinion).